No. 04-856

IN THE SUPREME COURT OF THE STATE OF MONTANA

2006 MT 54

_____

STATE OF MONTANA,

        Plaintiff and Respondent,

   v.

BRIDGETTE MORSE,

        Defendant and Appellant.

_____

APPEAL FROM:    District Court of the Twelfth Judicial District,
                    In and for the County of Hill, Cause No. DC 2003-125
                    The Honorable David G. Rice, Judge presiding.


COUNSEL OF RECORD:

        For Appellant:

            Daniel A. Boucher, Altman & Boucher, Havre, Montana

        For Respondent:

            Hon. Mike McGrath, Attorney General; Micheal S. Wellenstein, Assistant
            Attorney General, Helena, Montana

            Cyndee L. Peterson, Hill County Attorney, Havre, Montana


_____

                  Submitted on Briefs:  September 28, 2005

                              Decided:  March 14, 2006

Filed:

               _____
                             Clerk

Justice John Warner delivered the Opinion of the Court.

¶1      Bridgette Morse (Morse) appeals from an order of the Twelfth Judicial District Court, Hill County, denying her motion to suppress evidence gathered from an improper search and seizure. We affirm.

¶2      We address the following issue on appeal:

¶3      Did the District Court err in finding sufficient probable cause in the application for a search warrant to justify the search of Morse=s apartment?

¶4      On December 22, 2003, social worker Sheila Dugdale (Dugdale) of the Department of Public Health and Human Services (DPHHS) conducted a home visit to Morse=s apartment. Law enforcement officers Russell Ostwalt (Ostwalt) and Peter Federspiel (Federspiel) accompanied Dugdale at her request. An anonymous call to DPHHS five days before instigated this home visit. The caller had observed over 100 people stop at Morse=s apartment over the previous weekend, and reported that Morse sold drugs in the presence of her juvenile daughter.

¶5      During the fall of 2003,[1] the local Drug Task Force (Task Force) had also received a call concerning Morse from a known person who wished to remain anonymous. This caller had witnessed short-term traffic at Morse=s apartment and suspected Morse of selling drugs. In addition, the Task Force received information regarding Morse on December 17, 2003, from an anonymous informant, who had provided reliable information before. According to this informant, Morse distributed drugs from her apartment.

---

[1]Although the Task Force received this call on December 13, 2003, the application for a search warrant reported this call as being received during the fall of 2003.

¶6     When Dugdale, Ostwalt, and Federspiel arrived at Morse=s apartment, Dugdale knocked on the door using a code knock that had been provided by the person who had reported Morse was selling dangerous drugs. A female voice responded to the knock, but Dugdale could not understand what she said, and knocked again. No one inside the apartment responded to this second knock. After several more unanswered knocks on the door, Federspiel announced that it was the police. Morse then opened the door.

¶7     As soon as they entered the apartment, they could detect a strong odor of incense. Morse took Dugdale and Federspiel around the house, and Ostwalt remained in the living room with the other people in the apartment. In total, four people besides Morse were in the apartment, and all four had prior drug-related arrests. Morse also had a prior arrest for possession of drug paraphernalia. When Federspiel entered the bedroom, he could smell marijuana. In addition, Federspiel observed an empty electric digital scale box on the floor in the living room. According to Morse, she had received a Christmas present wrapped in the box. Federspiel asked for permission to search the bedroom, but Morse would not allow such a search without a warrant. Federspiel then cleared the residence and applied for a search warrant.

¶8     In his application for a search warrant, Federspiel related the information provided by the two callers to the Task Force and the caller to DPHHS. He also explained the delay in being allowed to enter the apartment, the odor of incense and marijuana, the empty electric digital scale box, and the prior criminal involvement with drugs of all persons found in the apartment. The magistrate found probable cause and issued a warrant to search Morse's apartment.

3

¶9 In executing the warrant, Federspiel searched Morse's apartment and found methamphetamine, 125.76 grams of marijuana, 70 tablets of the controlled drug alprazolam, a digital scale, and a box of sandwich bags. Federspiel then arrested Morse.

¶10 On January 5, 2004, the State charged Morse with criminal possession of dangerous drugs with intent to distribute, criminal possession of dangerous drugs, possession of property subject to criminal forfeiture, endangering the welfare of a child, and criminal possession of drug paraphernalia. Morse moved to suppress the evidence found pursuant to the search warrant, arguing that the search warrant application did not establish probable cause. The District Court held a hearing and denied the motion by written order filed on July 12, 2004.

¶11 Morse entered a plea agreement with the State filed on July 26, 2004. She pled guilty to criminal possession of dangerous drugs and criminal possession of drug paraphernalia. She reserved the right to appeal the District Court=s denial of her motion to suppress. The District Court sentenced Morse on September 9, 2004, and this appeal followed.

¶12 This Court reviews a district court=s denial of a motion to suppress evidence to determine first, whether the district court=s findings of fact are clearly erroneous, and second, whether the district court applied the law correctly. *State v. St. Marks*, 2002 MT 285, & 11, 312 Mont. 468, & 11, 59 P.3d 1113, & 11. Since the evidence at issue was gathered pursuant to a search warrant, we review whether the magistrate issuing the search warrant had a substantial basis to determine the existence of probable cause. *St. Marks*, & 12. In doing so, this Court must look solely to the information within the four

4

corners of the search warrant application. *State v. Griggs*, 2001 MT 211, & 18, 306 Mont. 366, & 18, 34 P.3d 101, & 18. This review considers the Atotality of the circumstances,@ rather than Aeach individual fact@ in the search warrant application. *State v. Beaupre*, 2004 MT 300, & 37, 323 Mont. 413, & 37, 102 P.3d 504, & 37 (quoting *St. Marks*, & 22). In undertaking this review, A[t]his Court pays great deference to a magistrate=s determination that probable cause exists for the issuance of a search warrant and we will draw all reasonable inferences possible to support the issuing magistrate's determination of probable cause.@ *Hauge v. Dist. Ct.*, 2001 MT 255, & 21, 307 Mont. 195, & 21, 36 P.3d 947, & 21.

¶13    Morse contends that the two telephone calls to the Task Force and the telephone call to DPHHS required further corroboration, and Federspiel=s observations at Morse=s apartment were insufficient to corroborate the telephone calls. After noting that Federspiel smelled incense and marijuana, observed the empty electric digital scale box, and identified the four guests as having previously been arrested for unidentified drug offenses, Morse asserts that only the odor of marijuana relates to criminal activity. She then asserts that our previous holding in *State v. Olson* (1979), 180 Mont. 151, 589 P.2d 663, that a search warrant based solely on an officer=s purported smell of marijuana smoke does not establish probable cause, controls. Thus, the warrant must be quashed and the evidence gathered must be suppressed.

¶14    The State concedes that the three telephone calls required further corroboration pursuant to our decision in *State v. Reesman*, 2000 MT 243, 301 Mont. 408, 10 P.3d 83. Still, the State argues that these calls are of value in the probable cause determination.

The State asserts that the criminal background checks performed by Federspiel on Morse and the other four people in the apartment also constituted information corroborating the telephone calls. Additionally, the State argues that the empty digital scale box and smell of marijuana further corroborated the telephone calls.

¶15 As the State concedes that the telephone calls were not sufficient to establish probable cause, we turn to the question of whether the search warrant application, considered as a whole, was sufficient to establish the required probable cause to support the search warrant. We note that, while the telephone calls require further corroboration, they still have some probative value in determining probable cause. *St. Marks*, ¶ 41.

¶16 Morse is incorrect that the only evidence of criminal activity described in the search warrant application was the odor of marijuana. Morse seems to argue that, in considering the criminal records of those in her apartment, the failure to identify the specific offenses they had been convicted of prevents their criminal backgrounds from corroborating the telephone calls. However, this Court has previously explained that A[a]nother routine piece of information indicating police corroboration is criminal background checks.@ *Reesman*, & 45.

¶17 The empty electric digital scale box, considered in the context of the search warrant application, also contributes to a determination of probable cause. The possible possession of an electric digital scale does not necessarily suggest criminal activity; however, this Court has previously explained that information revealing human conduct which is suspicious when viewed in conjunction with incriminating information received from an informant, corroborates the information received from the informant. *See Griggs*, & 50. In the present case, all three telephone calls suggested that Morse was

distributing drugs, and an electric digital scale would certainly be useful in carrying out such distribution. As such, the presence of the empty electric digital scale box, which suggested that Morse owned a sophisticated scale to weigh drugs, contributed to a determination of probable cause.

¶18 The odor of marijuana also contributes to a determination of probable cause. Morse correctly points out that the odor of marijuana alone does not constitute probable cause. *Olson*, 180 Mont. at 155, 589 P.2d at 665. However, the present case involves other facts that support a determination of probable cause, including the three telephone calls, Morse's criminal history with drugs, the criminal backgrounds of the other four people in the apartment, and the empty electric digital scale box. When considering the odor of marijuana along with these other facts, we conclude that the search warrant application established probable cause, and the District Court did not err in denying Morse=s motion to suppress.

¶19 Affirmed.

/S/ JOHN WARNER

We Concur:

/S/ KARLA M. GRAY
/S/ PATRICIA COTTER
/S/ BRIAN MORRIS
/S/ JIM RICE